23130

Samuel F. MOORE, Jr. and Bonnie S. Moore, Appellants v. SUMTER COUNTY COUNCIL and its Members in their capacity as members of said council, Respondents.

(387 S. E. (2d) 455)

Supreme Court

*Samuel F. Moore,* Dalzell, *pro se.*

*George C. James, Jr.,* Sumter, *for respondents.*

Heard Dec. 8, 1988.

Decided Jan. 8, 1990.

TOAL, Justice:

The sole issue presented in this appeal is whether one must exhaust administrative remedies before one pursues judicial relief from an allegedly invalid zoning ordinance.

## FACTS

On June 9, 1987, Sumter County Council enacted the *Airfield Landing Zone Ordinance*, which places various restrictions on the development and use of certain property in the vicinity of Shaw Air Force Base. The appellants, Samuel Moore, Jr., and Bonnie Moore, own property located within a zoned area entitled the "Airfield Landing Zone."

The Moores commenced this action against the Sumter County Council, alleging that the ordinance does not allow best-use development of their property and constitutes an unconstitutional taking of their property without just compensation. The Moores freely admit that they have not pursued any available administrative remedies. They assert that any attempt to do so would be tiresome and too costly.

The Circuit Court Judge granted summary judgment to the respondent, and the Moores now appeal.

## LAW/ANALYSIS

The *Airfield Landing Zone Ordinance* was passed pursuant to authority granted to Sumter County by S. C. Code Ann. § 6-7-710, *et seq.* (Law. Co-op. 1976). Section 6-7-750 provides for an appeal from an adverse, final administrative decision to the Circuit Court, and § 6-7-790 provides for an appeal from the Circuit Court to this Court.

The Moores contend that the *Airfield Landing Zone Ordinance* operates to amount to a regulatory taking of their property without just compensation. A regulatory takings claim has two elements: (1) the property owner must demonstrate that the regulation has in substance "taken" *his* property; and (2) the property owner must demonstrate that any proffered compensation is not "just." *MacDonald, Sommer & Frates v. Yolo County,* 477 U. S. 340, 348, 106 S. Ct. 2561, 2565, 91 L. ED. (2d) 285 (1986). Here, the Moores have failed to establish the first element.

As an initial matter, it appears that under the ordinance, there are many permitted uses applicable to the Moores' land. Industrial and manufacturing uses

which are permitted involve: (1) food and kindred products; (2) textiles; (3) apparel; (4) lumber and wood products; (5) furniture and fixtures; (6) paper and allied products; (7) stone, glass and clay products; (8) primary metal industries; and (9) fabricated metal products. Other uses mermitted are: (1) railroad; (2) motor vehicle transportation; (3) aircraft transportation; (4) auto parking; (5) utilities; (6) wholesale trade; (7) automotive, marine and aviation retail; (8) furniture and home furnishings retail; (9) apparel and accessories retail; (10) general merchandise retail; (11) finance, insurance, or real estate services; (12) business services; (13) warehousing and storage services; (14) cemeteries; (15) personal services; (16) repair services; (17) legal and other professional services; (18) nature exhibitions; (19) outdoor sports activities; (20) water based recreation areas; (21) agriculture related activities; (22) mining; (23) forestry; and (24) fishing and related activities.[1] We list these permissible uses to ullustrate that the ordinance in question does not render the Moores' property worthless.[2]

The Circuit Court judge granted summary judgment ■ to the respondent on the basis that the Moores had failed to exhaust their administrative remedies, and that their claim for judicial relief was therefore premature. We agree. The United States Supreme Court has held that, "[u]ntil a property owner has 'obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to its property,' 'it is impossible to tell whether the land retain[s] any reasonable beneficial use or whether [existing] expectation interests ha[ve] been de-

---

[1] We recognize that certain conditions apply to many of these uses.

[2] The United States Supreme Court has never articulated a "set formula" to determine where regulation ends and taking begins. *MacDonald, Sommer & Frates v. Yolo County,* 477 U. S. 340, 348, 106 S. Ct. 2565, 2565, 91 L. Ed. (2d) 285 (1986). However, we note that "a property owner is not entitled to have his property zoned for its most profitable use." *Hampton v. Richland County,* 292 S. C. 500, 357 S. E. (2d) 463 (Ct. App. 1987) (quoting 101A C.J.S. *Zoning and Land Planning* § 476 at 173 (1979)). A zoning classification is not an unconstitutional, compensable taking simply because it denies to a landowner the highest and best use of his property. *See Board of County Com'rs v. Mountain Air Ranch,* 192 Colo. 364, 563 P. (2d) 341 (1977); *Ohoopee Land Dev. Corp. v. Mayor & Council of Wrightsville,* 248 Ga. 96, 281 S. E. (2d) 529 (1981); *S. A. Healy Co. v. Town of Highland Beach,* 355 So. (2d) 813 (Fla. Dist. Ct. App. 1978); and *Young v. City of Franklin,* 494 N. E. (2d) 316 (Ind. 1986).

stroyed.' " *Id.* (quoting *Williamson Planning Comm'n. v. Hamilton Bank,* 473 U. S. 172, 186, 190 n. 11, 105 S. Ct. 3108, 3116, 3118 n. 11, 87 L. Ed. (2d) 126 (1985)). Furthermore, this Court has stated, "[t]he impact of [a] zoning ordinance upon [a given] property cannot be determined [when] the landowner has failed to pursue his administrative remedies by applying for a variance." *Dunbar v. City of Spartanburg,* 266 S. C. 113, 221 S. E. (2d) 848 (1976).

The record discloses two administrative remedies which are readily available to the Moores. Under the ordinance itself, the Moores may apply for a permit to make a material change in the use of their land; to erect or alter a structure; or to replace, substantially alter, or rebuild an existing nonconforming use. Secondly, the Moores may apply for a variance under S. C. Code Ann. § 6-7-740 (Law. Co-op. 1976). Hence, until the administrative remedies available to the Moores have been exhausted, a judicial determination of whether they have suffered a "taking" is impossible. The final impact of the ordinance on the property in question is uncertain.

The Moores assert that they should be excused from exhausting these remedies, because to do so would be too time-consuming and tiresome. A party is not excused from seeking administrative relief because he feels that he will encounter delay by the agency in acting on his requests. *See Gates Mills Invest. Co. v. Village of Pepper Pike,* 59 Ohio App. (2d) 155, 392 N. E. (2d) 1316 (1978).

The Moores also assert that the available administrative remedies are unduly expensive. It appears that a minority view allows for an exception to the requirement of exhaustion of administrative remedies in that one need not resort to an administrative remedy which is onerous or unduly expensive. *Karches v. City of Cincinnati,* 38 Ohio St. (3d) 12, 526 N. E. (2d) 1350 (1988). We have not yet adopted this exception, and even if we had, the Moores have not presented any probative evidence that the remedies available to them are unduly expensive. The burden of proof would rest with the Moores on this issue. A bare assertion that an administrative remedy is too expensive would not suffice under the minority view.

A general exception to the requirement of exhaustion of

administrative remedies exists when a party demonstrates that a pursuit of them would be a vain or futile act. 82 Am. Jur. (2d) *Zoning and Planning* § 332 at 903 (1976). The Moores have not advanced this exception, however.

We therefore hold that the Moores' action is premature, and that they must exhaust their administrative remedies before seeking judicial relief. Accordingly, the judgment of the lower court is affirmed.

GREGORY, C. J., and HARWELL, CHANDLER and FINNEY, JJ., concur.